472 A.2d 624

**In re ADOPTION OF SABRINA and Joshua and Jacob.**

**Appeal of V.W.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 1983.

Filed Feb. 3, 1984.

Petition for Allowance of Appeal Denied Oct. 15, 1984.

18

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

Ruth Duncan O'Brien, Carlisle, for appellant.

Barbara J. Seras, Carlisle, for appellees.

Ruby D. Weeks, Carlisle, for participating party.

Before McEWEN, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

Appellant V.W., the mother of three minor children, appeals from the order of April 27, 1983 involuntarily terminating her parental rights to these children. We affirm.

On March 25, 1982 Cumberland County Children and Youth Services (CYS) filed petitions to involuntarily terminate appellant's parental rights in her two oldest children, Sabrina and Joshua. A subsequent termination petition was filed regarding the youngest child, Jacob, on May 12, 1982.[1] Following consolidation and the initial day of hearings, appellant signed a voluntary relinquishment of parental rights and a colloquy was held. A few days later, appellant attempted to withdraw her voluntary relinquishment and the involuntary termination hearing was completed and followed by the order terminating her parental rights.[2]

---

**1.** All three children were represented by counsel during the proceedings pursuant to the Act of October 15, 1980, P.L. 934, No. 163, § 1, 23 Pa.C.S. § 2313 (since amended by Act of June 23, 1982, P.L. 617, No. 174, § 2 eff. in 60 days).

**2.** The trial court did not finally determine the voluntary relinquishment issue, but based its decision on the involuntary termination petitions. Because the trial court did not base its decision on the voluntary relinquishment, we do not speak to that issue on this appeal.

Appellant is the mother of the three children: Sabrina, born 2/13/78, Joshua born 6/2/79 and Jacob born 4/8/81.[3] Sabrina and Joshua were voluntarily placed in foster care by appellant and adjudicated dependent in April of 1978 and June of 1979, respectively. Jacob was placed in foster care and adjudicated dependent upon appellant's incarceration in June of 1981. All three children have remained in foster care since their initial placement.

Appellant, born June 25, 1958, is of limited intelligence, with a reading and writing level of second grade. She attended special education classes until the twelfth grade. Following the birth of Sabrina, appellant resided with her maternal grandmother, who took primary responsibility for Sabrina's care. Upon the grandmother's involuntary psychiatric commitment in April of 1978, appellant requested Sabrina be placed in foster care by CYS. Appellant stated at that time that she was not capable of caring for Sabrina by herself.

Joshua was voluntarily placed in foster care directly after his release from the hospital following birth because of appellant's lack of essential items necessary for his care. Appellant maintained visitation with both Sabrina and Joshua until her incarceration in June of 1981. She also entered into casework service plans with CYS to gain those parenting skills necessary for obtaining custody of the children. Three goals were established: (1) obtaining suitable housing, (2) obtaining employment, and (3) attendance at parenting classes.

Jacob was subsequently born in April of 1981 with congenital syphilis, a seizure disorder and irregular EEG. He requires regular administration of medication to control the seizures and careful monitoring of his physical development to ensure proper growth. Appellant cared for Jacob by herself until her incarceration in June of 1981.

3. All three were born out of wedlock; no paternity is listed on two of the three birth certificates. As to the third, the alleged father has renounced all rights to the child.

In order to assist appellant to reach her goal of obtaining custody of the children, various services were provided, prior to her June 1981 incarceration, including homemakers services, enrollment in a local infant development program, visiting nurse care, employment counseling and mental health counseling. Appellant has also received the assistance of mental health and alcohol rehabilitation services.

Appellant's personal history indicates significant problems with alcohol abuse. She has voluntarily admitted herself on several occasions for treatment. This abuse has contributed to her numerous arrests and subsequent periods of incarceration, in the latter part of 1980 and again from June of 1981 through the time of the order appealed from in the instant case. The record also indicates that while incarcerated, appellant has been denied parole for numerous prison violations, many involving violence.[4]

■ In all proceedings to involuntarily terminate parental rights, petitioner must prove the statutory elements by at least clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re T.R.*, 502 Pa. 165, 465 A.2d 642 (1983). The statutory bases for termination in the instant case, as set forth in the petitions, were 23 Pa.C.S. § 2511(a)(1), (2) and (5), as to Sabrina and Joshua and as to Jacob, § 2511(a)(2) and (5) which state:

§ 2511. **Grounds for involuntary termination**

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence

4. Several of appellant's arrests and convictions were for assault.

necessary for physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

Because of the importance placed on the family, the Commonwealth may disrupt the parent-child relationship only upon a clear showing of necessity; moreover, even if removal is necessary to protect the child, every effort should be made to reunite the family. *In re Adoption of R.I.*, 468 Pa. 287, 361 A.2d 294 (1976), *appeal dismissed, U.S. cert. denied,* 429 U.S. 1032, 97 S.Ct. 722, 50 L.Ed.2d 743 (1977). All circumstances must be considered when analyzing a parent's performance of parental obligations in a proceeding for termination of parental rights; the parent's performance must be measured in light of what would be expected of an individual in circumstances which the parent under examination finds herself. *In re Adoption of B.D.S.,* 494 Pa. 171, 431 A.2d 203 (1981).

As stated in *In re Burns,* 474 Pa. 615, 624–25, 379 A.2d 535, 540 (1977):

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental

obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life." (citations omitted).

■ A parent whose child has been placed in foster care has an affirmative duty to work towards the return of the child, but even if there has been a long separation occasioned by parental neglect or incapacity, termination of parental rights cannot be ordered if there is a reasonable possibility that the causes and conditions which have led to the separation can be remedied and the family restored. *In re Interest of C.M.E.*, 301 Pa.Super. 579, 448 A.2d 59 (1982).

■ On the other hand, although a parent may fulfill his or her parental duties and provide for the child by making suitable arrangements for the child's temporary care or by allowing others to provide essential parental services during a period of crisis, extended relegation of the child to the care of others as a result of parental incapacity is relevant in determining whether a child has been without essential parental care or control. *In re D.K.W.*, 490 Pa. 134, 415 A.2d 69 (1980).

■ Appellant argues that the evidence was insufficient to support the termination order. We disagree. We note initially our disapproval of the trial court's failure to specify upon which ground appellant's rights were terminated as to each of the three children. However, our review of the record makes clear that sufficient evidence was presented to support termination of appellant's parental rights to all three children based on 23 Pa.C.S. § 2511(a)(5). *See In re Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975) (reviewing court not precluded from considering statutory

provision regarding involuntary termination of parental rights not considered by trial court and sustaining decree); *see also Lambert v. Pittsburgh Bridge and Iron Works,* 227 Pa.Super. 50, 323 A.2d 107 (1974), *aff'd* 463 Pa. 237, 344 A.2d 810 (1975) (Superior Court may affirm judgment of trial court where correct on any legal ground or theory disclosed by record, regardless of reason or theory adopted by trial court).

The evidence reveals that prior to her most recent incarceration, appellant had failed to secure adequate housing for any extended period of time. Although suitable quarters were secured in September of 1978, appellant was asked to leave that residence in March of 1979 for non-payment of rent.[5] Since that time, appellant has been evicted from a residence hotel for hosting loud parties and physically and verbally abusing other residents and has been in and out of various alcohol rehabilitation centers.

Appellant has been employed once since 1978, which employment was terminated after a few weeks because of her extensive absenteeism. She joined the Job Corps in Pittsburgh in November of 1979, but without success. Appellant then returned to Carlisle in May of 1980. Soon afterward, appellant failed to attend a job interview arranged by one of her CYS caseworkers.

The testimony of the witnesses for CYS made clear that even when taking into consideration appellant's limited intellectual capabilities, she has refused to cooperate so as to attain those skills and stability in her personal affairs necessary for the placement of the children in her care. Appellant's performance was determined to be less than she was capable of producing. She has made no effort to improve her skills or reform her bad habits.

Her attitude and conduct demonstrate a continuing lack of care and concern toward her children, as evidenced by her visits with the children. During the visits, appellant

5. Although unemployed for the majority of time since 1978, appellant was eligible for and received rent assistance from the Cumberland County Redevelopment and Housing Authority.

demonstrated little affection for or ability to communicate with them. She would merely be present in the same room with the children and only infrequently hold or even touch them without the coaxing of the caseworkers. When Sabrina in particular would become fearful of appellant and cry, appellant would either return the child to the caseworker or walk out.

As to Jacob, appellant failed to make any significant effort to understand his medical needs and to provide for them. She tended to ignore Jacob while he was in her custody and appeared to lack even the most basic of parenting skills, such as feeding. Also, the trial court concluded that appellant did not have any strong emotional ties with her children, based on the testimony of Barbara Eubanks, who provided homemakers services to appellant, and the testimony of various caseworkers from CYS.

Concerning section 2511(a)(5), from the time of her June 1981 incarceration, appellant made no efforts to either contact the children or CYS concerning the children's well-being nor prison authorities concerning visitation.[6] Appellant also had no communication during this period with the children in the form of letters, presents or money, until after the initiation of the instant proceedings in March of 1982.

The law is clear that a parent's absence and/or failure to support a child due to incarceration is not conclusive on the issue of whether that parent has abandoned the child. *In re Adoption of McCray, supra.* However, a parent's responsibilities are not tolled during his or her incarceration; rather we must inquire whether the parent utilized those resources available while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, that parent's other rights may be forfeited.

**6.** The testimony of an employee of the correctional institution where appellant was incarcerated stated that nothing in the institution's administrative directives would have barred appellant's visitation with her children at the institution.

*Id.* Therefore, although parental rights cannot be terminated based solely on the fact that a parent is incarcerated, that parent continues to have an affirmative duty to maintain her relationship with her children.

Appellant cites *In re Adoption of M.T.T.*, 467 Pa. 88, 354 A.2d 564 (1976), where involuntary termination of an incarcerated parent's parental rights was denied. *M.T.T.* is distinguishable from the instant case, in that in *M.T.T.*, the incarcerated parent twice contacted the children's services agency and contacted his mother in attempts to maintain a parental relationship with his son. In the instant case, nothing in the record demonstrates that appellant utilized any resources to take affirmative action to fulfill her parental duties. *See In re Adoption of Infant Male M.*, 485 Pa. 77, 401 A.2d 301 (1979).

In short, appellant has failed to remedy those conditions which had caused the children's initial placement in foster care, despite the various and substantial resources provided to her. She has failed to take advantage of those opportunities available to her to assist in her parental education and personal counseling. We agree with the trial court that appellant cannot cope with the responsibilities of raising her children now nor will she be so able in the future.

 Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. *In re Smith's Adoption*, 412 Pa. 501, 194 A.2d 919 (1963). Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. *In re Burns, supra.* This, appellant has not done.

As stated by the trial court:

Respondent's behavior is devoid of any evidence whatsoever that she has made even a minimal effort to remedy those problems which occasioned the children's removal. Numerous caseworkers have attempted to teach re-

spondent the most basic parenting skills, all to no avail. Respondent's failure to improve her skills, which we believe is occasioned by her refusal, not her inability, to learn, has had a detrimental effect on the children, most notably Jacob. The children have formed no emotional bond with their mother nor is that likely to occur, given respondent's inability to show any affection for them. Moreover, respondent's past history blatantly demonstrates her refusal to take advantage of the aid given to her to locate employment and housing and even to be released from prison. A thorough examination of the record reveals to us that respondent is unwilling to change her life style, either now or at any point in the future.

Opinion of the Trial Court at p. 16.

Finally, we note that the testimony reveals that appellant's inability to perform her parental duties has had a detrimental effect on the children. Her relationship with Sabrina has been emotionally difficult for the child. As to Joshua and Jacob, they have little comprehension that appellant is their mother, based on appellant's lack of contact and failure to express any significant parental love or concern. Jacob is particularly vulnerable to appellant's parental deficiencies because of his special medical and developmental needs.

In summary, the evidence presented adequately proved that for a period in excess of six months, appellant has made no progress in resolving the conditions which led to the initial placement of the children in foster care. Appellant has not shown any change in her abilities to care for the children since her first contact with CYS in 1978, nor has she availed herself of any services available to her during her incarceration. Although appellant has expressed a desire to keep her children, more is required in light of the conclusive evidence presented in this case of her inability and unwillingness to care for these children and

the remedial assistance rendered appellant by the various agencies.

The order of April 27, 1983 is affirmed.