683 A.2d 297

**In re the ADOPTION OF DALE A., II, and Wayne Allen B., minors.**

**Appeal of DALE R.A.**

**Mary B., natural mother Wallace A., grandfather.[1]**

Superior Court of Pennsylvania.

Submitted June 17, 1996.

Filed Sept. 11, 1996.

1. We have deleted surnames in the caption and utilize initials to identify parties.

Robert B. McGuinness, Towanda, for appellant.

Albert C. Ondrey, Towanda, for Dale A., II & Wayne Allen B., appellees.

Frances W. Crouse, Athens, for Mary B., appellee.

Daniel J. Barrett, Athens, for Wallace A., appellee.

Before KELLY, POPOVICH and HESTER, JJ.

HESTER, Judge:

Appellant, Dale A. ("Father"), appeals from the order terminating his parental rights to his sons, Wayne B. and Dale A., II ("Sons"). We have reviewed the notes of testimony and considered the arguments of the parties and applicable law. We affirm.

Wallace A. ("Grandfather"), the paternal grandfather of Dale A., II and Wayne B., petitioned to terminate involuntarily the parental rights of his son, appellant herein. Father, who was arrested on June 1, 1979, and has remained incarcerated since that time, was convicted of first degree murder and sentenced to life imprisonment. At the time of Father's arrest, Sons were twenty months and six months old, respectively. They currently are eighteen and seventeen years old. With the exception of short periods of time, the boys have resided all of their lives with Grandfather, whom they call Dad.

Grandfather filed his termination petition on April 23, 1993. Amended petitions were filed on July 9, 1993, September 3, 1993, and November 15, 1993. Hearings were held on November 18, 1993, December 23, 1994, and April 3, 1995. On June

27, 1995, the orphans' court filed its decree nisi terminating Father's parental rights. Following the filing and denial of Father's exceptions, the decree was made final on December 19, 1995. This appeal followed.

Our standard of review in matters involving the involuntary termination of parental rights is clear:

In cases of involuntary termination of parental rights, the standard of appellate review is limited to the determination of whether the decree of the Orphan's Court is supported by competent evidence. *In re E.M. a/k/a E.W.C. et al.*, 533 Pa. 114, [115] 620 A.2d 481 (1993), quoting, *Matter of Adoption of G.T.M.*, 506 Pa. 44, 46, 483 A.2d 1355, 1356 (1984); *In re Adoption of B.D.S.*, 494 Pa. 171, 177, 431 A.2d 203, 206 (1981). Where the hearing court's findings are supported by competent evidence of record, "we must affirm the hearing court even though the record could support an opposite result." *In re Adoption of B.D.S.*, 494 Pa. 171, 177, 431 A.2d 203, 206 (1981), quoting, *Matter of Kapcsos*, 468 Pa. 50, 54, 360 A.2d 174, 176 (1976).

. . . .

In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re T.R.*, 502 Pa. 165, 465 A.2d 642 (1983). The standard of "clear and convincing" evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. *Matter of Sylvester*, 521 Pa. 300, 304, 555 A.2d 1202, 1203–04 (1989).

*Adoption of M.S.*, 445 Pa.Super. 177, 182–83, 664 A.2d 1370, 1372–73 (1995), quoting *In re Adoption of Atencio*, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (1994).

Father first argues that the orphans' court violated his constitutional rights by not ensuring his attendance at the hearings in this matter. This claim is based upon Father's

motion for sheriff's transportation to court hearing which he filed on September 19, 1994. At the time of filing, Father was incarcerated at Huntington State Correctional Facility in Huntington, Pennsylvania. The hearings in this matter were held in Bradford County in Towanda, Pennsylvania. On September 21, 1994, the orphans' court directed the Bradford County Sheriff to transport Father upon his payment of the costs associated with the transportation. Father alleges error in this ruling in that he was indigent and therefore unable to pay such costs. Thus, he contends that denying him the opportunity to testify in person violated his due process and equal protection guarantees of the Pennsylvania and United States Constitutions, and therefore, he was unable to present relevant evidence concerning the petition to terminate his parental rights.

The orphans' court stated the following concerning this issue in its opinion denying Father's exceptions to the decree nisi:

We first point out that we did not deny the Respondent the right to be present and to testify in person. We only held that the County was not compelled to bear the expense of his doing so. The Respondent *was* appointed counsel, and that counsel fully participated in the proceedings on behalf of the Respondent. He presented the Respondent's testimony by way of interrogatories. He could have done so by deposition, videotaped or otherwise.

Furthermore, we do not believe that merely refusing to place on the County the costs associated with bringing the Respondent from a state correctional institution to the hearing was a denial of due process or equal protection. We have so held before in a juvenile dependence proceeding, where the rights of a parent are of similar importance, and even where the parent was incarcerated in the local county jail. See, In Re: *E.M., Jr.* filed to 90 DP 000155 Slip.Op. (Dec. 18, 1982), (copy attached hereto). We stand by our earlier opinion and incorporate it herein by reference, and made it a part hereof as though fully set forth.

Orphans' court opinion, 12/20/95, at 2. The orphans' court expanded upon this reasoning in its opinion pursuant to Pa. R.A.P. 1925(a):

We again first point out that we never denied the Appellant's right to be present and to testify in person. We even made the County Sheriff's Department available to transport him to do so. We only held that if he wanted to avail himself of that opportunity, that the County and, consequently, the taxpayers were not compelled to bear the expense of his doing so. It appears that even this may have been more than the Appellant was entitled to.

. . . .

Here, we balanced the value of affording the Appellant the additional due process protection of providing him with free transportation to the hearings against the costs and risks that providing such transportation would impose on the county and society, and we believe the burden and risk to the Commonwealth outweighed the risk of erroneously depriving the Appellant of his parental rights.

We hasten to point out, however, that the Appellant's due process rights and opportunity to be meaningfully heard in a meaningful manner were adequately protected and fulfilled by appointing him counsel who fully participated in the proceedings in this Court, who cross-examined all witnesses as he deemed appropriate, who presented the Appellant's testimony by way of interrogatories, and who could have presented his testimony by way of written or video-taped deposition.

Orphans' court opinion, 3/14/96, at 2, 4–5.

Father's reliance upon *Commonwealth v. Regan,* 240 Pa.Super. 635, 359 A.2d 403 (1976), and *In the Interest of Jones,* 286 Pa.Super. 574, 429 A.2d 671 (1981), is misplaced and affords him no relief. In *Regan,* this court held that it was a denial of due process and equal protection to condition the appeal of an indigent defendant upon the payment of the costs associated with the appeal. Thus, in *Regan,* the indigent defendant was denied access to the courts. In the instant case, however,

Father had access to the court through his court-appointed attorney, who cross-examined all witnesses presented, and through the presentation of evidence by interrogatory. Of course, as the orphans' court points out, Father could have presented testimony by deposition, video-taped or transcribed. Similarly, in *Jones*, this court was concerned with the in-court presentation of evidence. Specifically, Jones was denied information concerning the identity of a witness who testified against her and was not permitted to attend the hearing at which the unidentified witness testified. In the instant case, Father was not denied the right to confront a witness, nor was he precluded from attending the hearing.

Rather, the reasoning of *Sullivan v. Shaw*, 437 Pa.Super. 534, 650 A.2d 882 (1994), supports the position of the orphans' court, the position we affirm today. As we noted therein:

> "Due process is flexible and calls for such procedural protections as the situation demands." *Mathews* [*v. Eldridge*, 424 U.S. 319,] 334, 96 S.Ct. [893], 902, [47 L.Ed.2d 18] [1976]. *Mathews* allows the government to tailor the amount of procedural protection to the situation by balancing the marginal value of additional protections against the marginal costs such additional protections would impose on the government. 424 U.S. at 335, 96 S.Ct. at 903. Prisoners' claims can be heard without their being removed from prison and physically brought to court. Transporting prisoners across the state imposes a considerable burden upon the Commonwealth. We think this burden will usually outweigh any risk of erroneously depriving prisoners of their legitimate expectations of visitation with their children.

*Id.*, 437 Pa.Super. at 539, 650 A.2d at 884–85. The appellant in *Sullivan*, an inmate at the State Correctional Institute in Greensburg, sought visitation rights with his three-year-old daughter. The appellant claimed that his due process rights were violated by the state's refusal to take him to the hearing. We held that a more reasonable approach would be "to allow Sullivan to file an informal brief with the trial court where he would offer his solution to the problems of visitation." *Id.*

In the present case, Father received court-appointed counsel who was present at the hearing and who had the opportunity to cross-examine witnesses. In addition, Father offered into evidence interrogatories and an affidavit, filed January 24, 1995. As the orphans' court noted, Father could have presented deposition testimony. We conclude that the procedure followed by the orphans' court "best conserves the Commonwealth's resources without increasing the risk of erroneous deprivation." *Id.*, 437 Pa.Super. at 540, 650 A.2d at 885. There was no deprivation of constitutional rights.

█ Father next asserts that there was insufficient evidence to support the finding that he evinced a settled purpose of relinquishing his parental rights or that he failed to perform parental duties for six months. Father's parental rights were terminated pursuant to 23 Pa.C.S. § 2511(a)(1), which provides:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

We discussed the requirements of 23 Pa.C.S. § 2511(a)(1) and noted the following in its application:

> The statute does not require a showing of both an intention to relinquish parental control and a failure to perform parental duties. *Baby Boy A. v. Catholic Social Services,* 512 Pa. 517, 521–523, 517 A.2d 1244, 1246 (1986); *In the Matter of the Adoption of David C.,* 479 Pa. 1, 387 A.2d 804 (1978).
>
> It is important to note that the statutory six-month requirement is not mechanically applied, and parents who fail to meet their parental obligations for a six-month period do not automatically forfeit their parental rights. *In Re Adoption of Hamilton,* 379 Pa.Super. 274, 280–281, 549 A.2d 1291, 1294 (1988); *In Re Adoption of Ostrowski,* 324 Pa.Su-

per. 216, 219, 471 A.2d 541, 543 (1984). Rather, the court must examine the individual circumstances of the case and any explanation offered by the parents to determine if that evidence, in light of the totality of the circumstances, clearly warrants involuntary termination of that parent's rights. *Adoption of Hamilton, supra* at 280–281, 549 A.2d at 1294; *Adoption of Ostrowski, supra* at 219, 471 A.2d at 543. In making such a determination the court must consider the barriers to exercising his or her parental rights which the parent faced in deciding whether that parent has abandoned the child. *In Re Baby Boy H.,* 401 Pa.Super. 530, 534–535, 585 A.2d 1054, 1056 (1991). To obtain benefit of this excuse, a parent must exhibit reasonable firmness in attempting to overcome the barriers or obstructive behavior of others; he or she must affirmatively demonstrate love, protection and concern for the child. *Baby Boy A., supra* at 521–523, 517 A.2d at 1246.

*Commonwealth v. Arnold,* 445 Pa.Super. 384, 389–90, 665 A.2d 836, 839 (1995).

The orphans' court adequately analyzed the evidence presented in this case, and we adopt it as our own:

In the case at bar, the father, by affidavit, indicated that he had sent cards and written to the children on a regular basis. He claims he has stayed in contact with the boys by talking on the phone with them and writing them letters. He explained that his phone conversations lasted only fifteen minutes due to prison rules. In addition, he says the boys' phone now has an answering machine, and prison rules prohibit prisoners from talking to answering machines. The father claims that he writes his sons every birthday, every holiday, and throughout the summer months. He alleges, however, that the Petitioner would throw away the mail he sent to the boys. The father also states that he cannot support the boys because he only makes $30.00 per month and that that money goes for legal fees, soap, shampoo, and typewriter paper.

On the other hand, the children and the Petitioner, testified that the children have received only sporadic holiday

and birthday cards, very infrequent and sporadic telephone calls and that the natural father has not ever requested photographs of the boys or copies of their report cards from school. They also testified that the Petitioner has done nothing to interfere with the father's contact with the boys and, in fact, that the Petitioner made sure the boys received any mail that they did receive from the father. We found the testimony of the children and the Petitioner to be far more credible than the father's. It is clear that the father has shown only a little interest in the children, and that little interest has been shown only on occasion.

The relevant statute and the applicable case law reflects a standard of parental duty which the Respondent here has clearly failed to meet. Merely sending occasional holiday and birthday cards is not "taking and maintaining a place of importance in the [childrens' lives]." *Baby Boy A. v. Catholic Social Services,* supra. In *In the Interest of J.E.S.,* 365 Pa.Super. 291, 529 A.2d 514 (1987), the court found that an incarcerated father's failure to consistently attempt to maintain contact with his children, and use means available to him to continue a relationship, including the failure to correspond or support, warranted termination of the father's parental rights. Suffice it to say, that in the case at bar, the natural father has not even adequately utilized the minimal opportunities available to him, in his circumstances, to attempt to take and maintain a place of importance in the children's lives.

The court specifically found that the testimony of Sons and Grandfather was more credible than that of Father. The common thread running through Father's argument is that his incarceration prevented him from becoming involved in his sons' lives. It is clear that his own inaction cast him in that role. Our Supreme Court has stated, "Even an illiterate prisoner can show some interest in his child's well-being and we now hold the law of Pennsylvania requires him to do so if he wishes to retain an absolute right to parental status...." *In re Adoption of Baby Boy A.,* 512 Pa. 517, 521, 517 A.2d 1244, 1245–46 (1986).

Thus, a parent's responsibilities are not tolled during his incarceration. Instead, a reviewing court must analyze whether the parent utilized those resources available while in prison to maintain a relationship with his child. *In re Adoption of Sabrina*, 325 Pa.Super. 17, 472 A.2d 624 (1984). As in *Sabrina*, the record in the present case demonstrates that Father failed to utilize any resources to take affirmative action to fulfill his parental duties.

> Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. *In re Smith's Adoption*, 412 Pa. 501, 194 A.2d 919 (1963). Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.

*Id.*, 325 Pa.Super. at 27, 472 A.2d at 629, citing *In re Burns*, 474 Pa. 615, 379 A.2d 535 (1977). This, appellant has not done.

The instant case is quite similar to *In re J.E.S.*, 365 Pa.Super. 291, 529 A.2d 514 (1987). There, an incarcerated father sent his children four letters during an eighteen-month period. Additionally, he did not send gifts, cards, contribute to their support, or call them on the telephone. He contacted Children and Youth Services once concerning his children. We held that there was competent evidence to support the trial court's order terminating his parental rights.

In the present case, Father merely has mailed a few cards to his sons in over five years. Clearly, he has not used the resources available to him to maintain a place of importance in his sons' lives. He consistently has not maintained contact with the boys, nor has he used the means available to him to attempt to overcome any obstacles impeding his relationship with them. "Appellant's two brief phone contacts does not constitute the love, protection, guidance and support that [the child] needs." *In re Adoption of L.D.S.*, 445 Pa.Super. 393, 397, 665 A.2d 840, 843 (1995).

As it is clear that appellant failed to perform parental duties for a period greater than six months, the requirements of 23 Pa.C.S. § 2511(a)(1) have been met.

Order affirmed.