J-S84031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: E.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: P.C., FATHER | No. 1297 EDA 2016 |

Appeal from the Order Entered March 29, 2016
in the Court of Common Pleas of Philadelphia County Family Court
at No(s):
CP-51-AP-0000280-2015
CP-51-DP-0001663-2012
FID 51-FN-370117-2009

| | |
|---|---|
| IN THE INTEREST OF: P.E.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: P.C., FATHER | No. 1299 EDA 2016 |

Appeal from the Order Entered March 29, 2016
in the Court of Common Pleas of Philadelphia County Family Court
at No(s):
CP-51-AP-0000279-2015
CP-51-DP-0001664-2012
FID 51-FN-370117-2009

BEFORE: OLSON, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                 **FILED NOVEMBER 16, 2016**

Appellant, P.C. ("Father"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, which involuntarily terminated his parental rights to minor children, E.C. and P.E.C. ("Children"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

We adopt the facts and procedural history set forth by the trial court's opinion. *See* Trial Ct. Op., 5/25/16, at 1-4.

Father raises the following issues for our review:

> A. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act 23 Pa.C.S.A. §2511 (a)(1), (a)(2), (a)(5), and (a)(8) as [F]ather made progress towards working and meeting his FSP goals.
>
> B. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental physical and emotional needs of [Children] as required by the Adoption Act 23 Pa.C.S.A. §2511(b)?

Father's Brief at 2.

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (citation omitted).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. . . . We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

- 2 -

> *In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super.) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004) (internal citations omitted).

> > Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa. Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa. Super. 2004).

*In re Z.P.*, 994 A.2d at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa. Super. 2007)).

The Philadelphia Department of Human Services ("DHS") sought involuntary termination of Father's parental rights on the following grounds:

> **§ 2511. Grounds for involuntary termination**

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose

of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors

such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights

> may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340 (citation omitted). The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago

stated in the case of ***In re Geiger***, 331 A.2d 172 (Pa. 1975), where our Supreme Court announced that under what is now Section 2511(a)(2), the involuntary termination petitioner "must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa. Super. 1998).

Furthermore, termination of parental rights under Section 2511(a)(5) requires: "(1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P.***, 994 A.2d at 1118 (citation omitted).

To terminate parental rights under Section 2511(a)(8), the petitioner must demonstrate the following factors: "(1) the child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the [child's] needs and welfare . . . ." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. ***In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** at 520 (citations omitted). Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P.***, 994 A.2d at 1121 (citations omitted).

Our Supreme Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.
>
> Where a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his or her child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children.

*In re B.,N.M.*, 856 A.2d at 855 (citations and quotation marks omitted).

"[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* at 856.

After careful consideration of the parties' briefs, the record, and the decision of the trial court, we affirm on the basis of the court's opinion. **See** Trial Ct. Op. at 4-10 (holding: **(1)** Father has been incarcerated from the

time Children came into care in September 2012, and, therefore, has been unable to meet Children's daily needs; Father's monthly visits with Children are insufficient to maintain a parent-child relationship; Father has not made any attempt to satisfy his FSP objectives; Father has an extensive criminal history and currently no date is set for his release from prison; Children are now in a positive environment with their foster parents, who provide for Children's daily needs and with whom Children have developed a parent-child bond; Children have received consistent love, care, support, and affection from their foster parents; Father's limited contact with Children prior to his incarceration combined with his current unavailability demonstrates his inability to undertake his parental duties, to provide a stable environment for Children, and to significantly contribute to Children's psychological health and well-being; the record indicates there was clear and convincing evidence that Father refused or failed to perform his parental duties pursuant to § 2511(a)(1), (2), (5), and (8); **(2)** Children would not suffer irreparable emotional harm by terminating Father's parental rights; the case manager's testimony indicated that Children have developed a strong parent-child bond with their foster parents; the case manager also testified that during visits with Father, P.E.C. was inattentive and routinely expressed a desire to watch television or play rather than interact with Father; the case manager attributed P.E.C.'s behavior to being placed in care at a young age and never having lived with Father; Father never

established a parent-child relationship with P.E.C.; Father's relationship with E.C. resembled a friendship more than a parent-child relationship; even if Father was given an opportunity to care for Children, his plans for the future are speculative; Children can receive the necessary permanency and stability from their foster parents and, therefore, it is in Children's best interest to change the goal to adoption; there is clear and convincing evidence that DHS met its burden pursuant to § 2511(b)).  Accordingly, we affirm the court's orders.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2016

# THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: E.C. | : | CP-51-DP-0001663-2012 |
| | : | CP-51-AP-0000280-2015 |
| | : | |
| IN RE: P.E.C. | : | CP-51-DP-0001664-2012 |
| | : | CP-51-AP-0000279-2015 |
| | : | |
| APPEAL OF: P.C., Father | : | Superior Court |
| | : | No. 1297 EDA 2016 |
| | : | No. 1299 EDA 2016 |

## OPINION

Younge, J.                                          May 25, 2016

## I.  OVERVIEW

This appeal arises from this Court's Order on March 29, 2016, terminating the parental rights of P.C. ("father"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office.

Lee W. Kuhlman, attorney for father, filed a timely appeal from the March 29, 2016 Order terminating father's parental rights with an attached Concise Statement of Errors, Affidavit of Service, and other related documents.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A summary of the relevant procedural history is set forth as follows:

The child, E.C., was born on April 21, 2005, and the child P.E.C. was born on January 7, 2008.

On September 3, 2012, DHS received a General Protective Services Report ("GPS") report which alleged E.C. and P.E.C were left home alone from 11:30 p.m. until 5:40 a.m., without adult supervision. It was further alleged that the children were found in the home

with the apartment door ajar. Police were contacted around 4:00 a.m., but Christina Molina, E.C. and P.E.C.'s mother ("mother"), did not return to the apartment until 5:40 a.m. Upon mother's return to the home, it was alleged that she was intoxicated and she had instructed E.C. to watch P.E.C. until she returned. It was further reported that mother was uncooperative with the police and was subsequently arrested on two counts of child endangerment charges. Pedro Crespo, Jr. ("father"), was incarcerated at the time of mother's arrest. The children's paternal grandfather, Pedro Crespo Sr. ("grandfather"), agreed to care for them. It was also alleged that the grandfather was also caring for the children's sibling, Yanelis. The report was substantiated.

On the same day, DHS obtained an Order of Protective Custody ("OPC") for E.C. and P.E.C. The police transported E.C. and P.E.C. to DHS. DHS completed criminal and Childline clearances for the grandfather and the children were released to his care.

Mother pled guilty to two counts of child endangerment and was sentenced to three years of probation. Mother subsequently violated her probation on two occasions and was most recently sentenced on June 26, 2014, to back time confinement.

On September 7, 2012, four days after the children went into grandfather's care, he telephoned DHS and made the agency aware that he was no longer able to care for E.C. and P.E.C. The grandfather stated that he had brought the children to Ibeth Solivan, a family friend who had cared for the children in the past.

On September 11, 2012, DHS visited Ms. Solivan's home. E.C. and P.E.C. appeared to be safe.

On September 12, 2012, DHS performed clearances on Ms. Solivan's home, however, the home was found not to be appropriate, and subsequently DHS removed the children from her care.

Moreover, DHS learned that father was convicted of murder and related charges in April 1993 and sentenced to eleven (11) to thirty (30) years confinement. After his release, father was later arrested on November 13, 2010, and charged with aggravated assault, rape, involuntary deviate sexual intercourse, sexual assault, unlawful restraint, indecent assault, simple assault, and recklessly endangering another person. Mother was named

2

as the complainant and charges were subsequently withdrawn when she repeatedly failed to appear in court. On August 11, 2011, father was arrested and charged with driving while under the influence.

On September 14, 2012, a shelter care hearing was held before the Honorable Thomas Nocella, who lifted the OPC and ordered the temporary commitment to DHS to stand.

An adjudicatory hearing was held on October 1, 2012, before the Honorable Vincent L. Johnson, who adjudicated E.C. and P.E.C. dependent and committed them to the care and custody of DHS.

On October 15, 2012, DHS held an initial Family Service Plan meeting ("FSP"). Father's objectives were visitation, and upon release from prison, father was to make himself available to determine his compliance in the areas of 1) housing; 2) employment; 3) drug and alcohol; 4) mental health; and 5) visits.

The matter was then listed on a regular basis before judges of the Philadelphia Court of Common Pleas-Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. §6351, and evaluated for the purpose of determining on reviewing the permanency plan of the child.

On March 29, 2016, at the termination hearing, Mr. Hill, the children's case manager, testified that during father's supervised visits at prison with P.E.C., P.E.C. was usually inattentive and needed to be redirected. P.E.C. also routinely expressed a desire to play or watch television, instead of interacting with father. Further, Mr. Hill testified that as between father and E.C., there was better interaction and father and E.C. would discuss things that happened in the past. Mr. Hill also testified that although father's visits went well with E.C., and father was happy to see her, father is not currently in the position to receive E.C. or P.E.C. into his care, due to his current incarceration which could continue for an additional five years.

At the March 29, 2016, Termination of Parental Rights hearing for father, the Court found by clear and convincing evidence that father's parental rights as to E.C. and P.E.C. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to adoption.

3

The instant timely appeal of father follows.

## III. STANDARD OF REVIEW

"When reviewing an appeal from a decree terminating parental rights, [the appellate court is] limited to determining whether the decision of the trial court is supported by competent evidence." *In re K.C.W.,* 689 A.2d 294, 298 (Pa.Super. 1997). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *Id.* "Where a trial court has granted a petition to involuntarily terminate parental rights, the [appellate] court must accord the hearing judge's decision the same deference that we would give to a jury verdict. *In re Child M.,* 681 A.2d 793, 800 (Pa.Super. 1996)." "[The appellate court] must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *In re Matsock,* 611 A.2d 737, 742 (Pa.Super.1992).

## IV. DISCUSSION

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S. §2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511(a). *In the Interest of B.C.,* 36 A.3d 601 (Pa.Super 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511(a), it must then engage in an analysis of the best interest of the child under Section 2511(b). *Id.*

In the present case, father's parental rights were terminated based on §§2511(a)(1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.,* 810 A2d 688, 690 (Pa.Super. 2002).

4

To satisfy section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, father failed to perform parental duties for the children. The Court found by clear and convincing evidence that the father refused or failed to perform his parental duties.

The Superior Court has held that "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003). Further, the Pennsylvania Supreme Court has confirmed that "when it comes to incarcerated parents the primary focus under § 2511(a)(1) is whether the parent declined to yield to obstacles created by imprisonment and employed available resources to maintain a relationship with the child." *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012). "[A] parent's responsibilities are not tolled during his incarceration. Instead, a reviewing court must analyze whether the parent utilized those resources available while in prison to maintain a relationship with his child." *In re Adoption of Sabrina,* 472 A.2d 624, (Pa.Super 1984).

In the instant matter, father has been incarcerated from the time that E.C. and P.E.C. came into care. (N.T. 3/29/2016, p. 14). As of the March 29, 2016 termination hearing, father was still incarcerated. *Id.* While father participated in supervised visits with E.C. and P.C., he has been unavailable and unable to meet their daily needs. (N.T. 3/29/2016, pp. 14, 15, 20). Father's monthly supervised visits with E.C. and P.E.C. are insufficient to maintain a parent-child relationship with the children. (N.T. 3/29/2016, pp. 14, 15, 20, 24). Further, there is no indication that father made any attempt to satisfy his FSP objectives.

Moreover, the Court finds as indicative that there is no date set for father's release from incarceration. (N.T. 3/29/2016, p. 30). The Court finds that it is speculative, at best, to consider if father were granted the opportunity to parent E.C. and P.E.C., whether father could do so competently, since father was unable to demonstrate his compliance with any

5

of his FSP objectives. (N.T. 3/29/2016, p. 25, 26). Father's unavailability and resulting lack of compliance does not warrant his reunification with the children. *Id.*

Father also has a long standing criminal history. (N.T. 3/29/2016, p. 17). Father was convicted of murder and related charges in April 1993 and sentenced to eleven (11) to thirty (30) years confinement. *Id.* Father was released in November 13, 2010. *Id.* In addition, on August 11, 2011, father was arrested and charged with driving while under the influence. Father's continued commitment to engage in illegal activity, shows his inability to provide a stable environment for E.C. and P.E.C. *Id.*

The relevant statute and the applicable case law reflect a standard of parental duty which the father here has clearly failed to meet. Reunification with E.C. and P.E.C. is not a viable permanency option for father because he has failed to improve the circumstances that led to his children's placement. Father's long standing incarceration coupled with his failure to complete his FSP objectives, make it impossible to achieve the goal of reunification with the statutory parameters set forth in 23 Pa.C.S. § 2511(a)(8). (N.T. 3/29/2016, p. 25).

A parent has an affirmative duty to act in his children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

In the instant case, E.C. and P.E.C. have been in placement since September 28, 2012. (N.T. 3/29/2016, p. 9). The testimony established that E.C. and P.E.C. are now in a positive environment with their foster parents and pre-adoptive resource for the last two years. (N.T. 3/29/2016, p. 11). Further, the foster parents provide for E.C. and P.E.C.'s daily needs and the children have developed a parent-child bond with them. (N.T.

6

3/29/2016, pp. 11, 12). The record also reflects that while father has had monthly supervised visits with the children during his incarceration. Father's limited contact with the children prior to his incarceration, coupled with father's unavailability to parent the children, has demonstrated father's inability to undertake his parental duties and to significantly contribute toward E.C. and P.E.C.'s psychological health and well-being. (N.T. 3/29/2016, p. 14-16, 20, 21). In comparison, for the last two years, E.C. and P.E.C. have received consistent support, care, love and affection from their foster parents who have consistently provided for them and have demonstrated more fully a parent-child relationship. (N.T. 3/29/2016, p. 13).

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. §2511 (a)(2).

"It is incumbent upon a parent when separated from his children to maintain communication and association with the child[ren]. This requires an affirmative demonstration of parental devotion, imposing upon the parent the duty to exert himself, to take and maintain a place of importance in his child[ren]'s [lives]." *In re V.E.*, 611 A.2d 1267, 1271 (Pa. Super. 1992).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

As of the March 29, 2016 permanency review hearing, E.C and P.E.C. have been in care for thirty (30) months. (N.T. 3/29/2016). Although, it was noted that father had supervised visits with the children once a month, father was not able to effectuate visits due to his incarceration; instead, the children were transported to father by an agency social worker, otherwise visits would not have occurred. (N.T. 3/29/2016, pp. 11, 12). Father has essentially, through his own conduct, been unavailable to parent E.C. and P.E.C. Father's long standing incarceration serves as a barrier to reunification, as father is unable to perform his parental duties.

§2511 (a)(5) requires that :

> (5)　The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will no remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)　The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence, as discussed above, equally support the Court's conclusion to terminate father's parental rights. §2511 (a)(5) and (a)(8).

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence in the light of the totality of the circumstances clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, and stability. *In re Adoption of T.BB.*, 835 A.2d 387, 397 (Pa. Super. 2003). § 2511(b).

The trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000).

In the instant matter, the Court found that E.C. and P.E.C. would not suffer irreparable emotional harm if father's parental rights were terminated. (N.T. 3/29/2016, p. 36). The testimony of the case manager, Mr. Hill, established that E.C. and P.E.C. are with foster parents who have developed a strong parent-child bond with them. (N.T. 3/29/2016, pp. 15, 16). In fact, the case manager noted that during father's visits with P.E.C., P.E.C. was usually inattentive and needed to be redirected. P.E.C. also routinely expressed a desire to play or watch television, instead of interacting with father. Based on Mr. Hill's observations and in his opinion, P.E.C.'s inattentiveness stemmed from both the early age at which P.E.C. came into care, and that P.E.C. never resided with father; therefore father never established a parent-child relationship with P.E.C. Instead, Mr. Hill observed such a relationship between P.E.C. and his pre-adoptive foster parents.

Further, although Mr. Hill testified that as between father and E.C., there was better interaction, father's relationship with E.C. resembled more of a friendship than a parent-child relationship. (N.T. 3/29/2016, p. 13). Moreover, although during visits father and E.C. would discuss things that happened in the past, and father seemed pleased to see E.C., father is not currently in the position to reunify with E.C. or P.E.C., due to his current incarceration which could continue for an additional five years. Father's exact date of release is unknown.

Moreover, even if father were given the opportunity to care for E.C. and P.E.C., father's plans for the future are speculative. E.C. and P.E.C.'s life does not come to a standstill while father serves out his term. One of the goals of the Adoption and Safe Families Act is to move children promptly to safe families so that they can be provided with permanency and stability. This Court finds that E.C. and P.E.C. can receive such permanency in their pre-adoptive foster home. Therefore, this Court found, based on all the evidence presented that terminating the parental rights of father as to E.C. and P.E.C. would not cause them irreparable harm due to their parent-child bond with their foster

9

parents to whom they look to meet their daily needs. Accordingly, E.C. and P.E.C. should be freed for adoption, as it is in their best interest. (N.T. 3/29/2016, p. 44).

The Trial Court found by clear and convincing evidence that the Department of Human Services met its statutory burden pursuant to § 23 Pa.C.S. §2511 (a) & (b) and that it was in the best interest of the children to change the goal to adoption. (N.T. 3/29/2016, p. 39).

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a)(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause E.C or P.E.C. to suffer irreparable harm, and it is in the best interest of the children, based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate father's parental rights.

Accordingly, the Trial Court's Order entered on March 29, 2016, terminating the parental rights of father, P.C., should be properly affirmed.

By the Court

J. _____

10

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: E.C. | : | CP-51-DP-0001663-2012 |
| | : | CP-51-AP-0000280-2015 |
| | : | |
| IN RE: P.E.C. | : | CP-51-DP-0001664-2012 |
| | : | CP-51-AP-0000279-2015 |
| | : | |
| APPEAL OF: P.C., Father | : | Superior Court |
| | : | No. 1297 EDA 2016 |
| | : | No. 1299 RDA 2016 |

## PROOF OF SERVICE

I hereby certify that this court is serving, today 5/25/10, the foregoing Opinion, by regular mail, upon the following person(s):

Lee W. Kuhlmann, Esq.
1800 JFK Blvd., Ste 300
Philadelphia, PA 19103-7402

Tara B. Fung, Esq.
City of Philadelphia Law Department
1515 Arch Street, Fl., 15
Philadelphia, PA 19102-1595

Edelina Schuman, Esq.
1501 Arch Street, 11th Fl.
Philadelphia, PA 19102

Janice M. Sulman, Esq.
1501 Arch Street, 11th Fl.
Philadelphia, PA 19102

BY THE COURT

Honorable Lyris A. Younge