J-S95033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.P.S.B., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| APPEAL OF: C.B., Father | : | No. 1725 EDA 2016 |

Appeal from the Order May 9, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): CP-51-AP-0000100-2016,
CP-51-DP-0001739-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N.S.B., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| APPEAL OF: C.B., Father | : | No. 1726 EDA 2016 |

Appeal from the Order May 9, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): CP-51-AP-0000101-2016,
CP-51-DP-0001149-2012

BEFORE:  STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 01, 2017**

C.B. ("Father") appeals from the Orders[1] granting the Petitions filed by

the Philadelphia Department of Human Services ("DHS") to involuntarily

terminate his parental rights to his daughter, A.N.S.B., born in February

2011, and his son, C.P.S.B., born in July 2012 (collectively, "Children"),

pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changing

---

[1] This Court, *sua sponte*, consolidated Father's appeals from the termination
Orders.

their permanency goals to adoption.[2]  Additionally, Gary S. Server, Esquire

("Attorney Server"), Father's counsel, has filed a Petition to Withdraw as

counsel and an accompanying brief pursuant to **Anders v. California**, 386

U.S. 738, 744 (1967).  We grant Attorney Server's Petition to Withdraw, and

affirm the trial court's termination Orders.

The trial court aptly summarized the factual and procedural history of

this case, which we adopt for the purpose of this appeal.  **See** Trial Court

Opinion, 9/9/16, at 1-2.

Father, through counsel, filed a timely Notice of Appeal and a Pa.R.A.P.

1925(b) Concise Statement of matters complained of on appeal.  On October

12, 2016, Attorney Server filed a Petition to Withdraw as counsel.

In the **Anders** Brief, the following questions are presented for our

review:

> I. Whether[,] under the Juvenile Act, 42 Pa.C.S.A. [§] 6351, and
> 55 Pa. Code [§] 3130.74, in accordance with the provisions of
> the federal Adoption and Safe Families Act ["ASFA"], 42 U.S.C.
> [§] 671 *et seq.*, reasonable efforts were made to reunite []
> Father with [] Children[?]
>
> II. [W]hether the goal changes to adoption were the dispositions
> best suited to the safety, protection and physical, mental and
> moral welfare of [] Children[?]
>
> III. Whether it was proven by clear and convincing evidence that
> Father's parental rights should be terminated under [23
> Pa.C.S.A. §] 2511(a) [and] (b)[?]

---

[2] DHS included S.S. ("Mother") in its Petitions for involuntary termination of
parental rights.  On June 6, 2016, the trial court involuntarily terminated
Mother's parental rights to Children.  Mother is not a party to the instant
appeal.

***Anders*** Brief at 6 (numbering added, claims separated to conform to arguments set forth in brief).  Father neither filed a *pro se* brief, nor retained alternate counsel for this appeal.

We must first determine whether Attorney Server has complied with the dictates of ***Anders*** in petitioning to withdraw from representation.  ***See In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014) (stating that "[w]hen counsel files an ***Anders*** brief, this Court may not review the merits without first addressing counsel's request to withdraw.").  This Court has extended the ***Anders*** principles to a first appeal by an indigent parent from a decree involuntarily terminating his or her parental rights.  ***See In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992).  Pursuant to ***Anders***, when an attorney believes that an appeal is frivolous and wishes to withdraw as counsel, he or she must

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the [client], counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to [the client] and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention.

***In re S.M.B.***, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).  With respect to the third requirement of ***Anders***, that counsel inform the client of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [a] petition to withdraw a copy of the letter

sent to the[] client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, the Pennsylvania Supreme Court has determined that a proper ***Anders*** brief must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Once counsel has satisfied the above requirements, this Court "must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, 856 A.2d at 1237.

Here, Attorney Server has complied with the requirements set forth in ***Anders*** by indicating that he "made a thorough and objective review" of the record and determined that an appeal would be frivolous. Further, the record contains a copy of the letter that Attorney Server sent to Father, informing him of Attorney Server's intention to withdraw and advising him of his right to proceed *pro se*, retain counsel, and file additional claims. Finally, Attorney Server's ***Anders*** Brief meets the standards set forth in ***Santiago***. Because Attorney Server has complied with the procedural requirements for withdrawing from representation, we will independently review the record to determine whether Father's appeal is, in fact, wholly frivolous.

In his first claim, Father asserts that DHS did not make reasonable efforts to reunite Father and Children. *Anders* Brief at 18. Father argues that the social workers assigned to his case "simply did not complete the tasks necessary to verify[] his employment or to show the [c]ourt that his housing was appropriate and safe for [C]hildren." *Id.* Based on these contentions, Father claims that DHS violated the Juvenile Act and AFSA.[3] *Id.*

However, Attorney Server points out that this argument is rendered frivolous by the Supreme Court of Pennsylvania's holding, in *In re D.C.D.*, 105 A.3d 662, 673-74 (Pa. 2014), that it is unnecessary to demonstrate that an agency has made reasonable efforts to reunite a parent with his child before the parent's rights may be terminated. *Anders* Brief at 18. Attorney Server also indicates that, even if Father could present such a claim, it would not be supported by the evidence of record. *Id.* at 19. Attorney Server states that "[t]he appropriate referrals, opportunities and services were provided to [F]ather. It was [F]ather's inability[,] over the course of 21 months[,] to completely avail himself of the services that were offered to him, or to provide the necessary documentation, or to abide by the simple common sense rules of his visitation that ensured the safety of [C]hildren, that thwarted the attempt to reunify this family." *Id.* at 20.

---

[3] Citing to 42 U.S.C. § 675(1)(B), Attorney Server asserts that AFSA "requires that a social service agency formulate a plan for assuring that the child receives safe and proper care and that services are provided to the parents." *Anders* Brief at 19.

- 5 -

As Attorney Server correctly points out, the Juvenile Act does not require a showing of reasonable efforts in order to terminate parental rights. *See In re D.C.D.*, 105 A.3d at 673-74.[4] Specifically, the Supreme Court of Pennsylvania has held that,

> while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) [of the Juvenile Act] forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.

*Id.* at 675. Thus, we conclude that Father's first claim is frivolous.

As Father's second and third claims are related, we will address them together. In his second claim, Father argues that the change in Children's permanency goal to adoption "was not the disposition best suited to the safety, protection and physical, mental and moral welfare of [Children]." *Anders* Brief at 20. Father asserts that, during the hearing, Father "claimed to have fulfilled some of his objectives," and "denied that he had received the necessary continuity in [social] workers that he needed." *Id.* Father also claims that he has a strong bond to Children, he has obtained stable housing, and he is ready to assume his parental responsibilities. *Id.*

---

[4] Although Attorney Server suggests that there may be a question as to whether Pennsylvania state law is in conflict with federal law, he fails to identify the particular conflict, or cite to any legal authority in support of such argument. *See* Pa.R.A.P. 2119(a) (requiring that each point in an argument contain "such discussion and citation of authorities as are deemed pertinent."). Nevertheless, our independent research reveals no legal authority supporting such a claim.

However, Attorney Server points out that "[F]ather[,] throughout the case[,] refused to accept completely the service[s] that could have been provided to him … service[s that were] designed to keep him free of drugs and to provide him with the necessary skills to avoid drug addiction and to keep [C]hildren safe." *Id.* at 21. Attorney Server further indicates that "a goal change to adoption in a loving family setting would be the disposition best suited to the safety, protection and physical, mental and moral welfare of [C]hildren … [b]ecause [F]ather failed to affirmatively assume his parental duties within the 21 months and failed to … fully complet[e] the rather simple objectives imposed upon him in this case[.]" *Id.* at 22.

In his third claim, Father contends that DHS failed to prove by clear and convincing evidence that his parental rights to Children should be terminated under Sections 2511(a)(1), (2), (5), (8) and (b). *Anders* Brief at 23. Father claims that he sufficiently fulfilled his objectives, is "clean from substances," has stable housing and employment, and is capable of providing Children with the essential parental care, control and subsistence necessary for their physical and mental well-being. *Id.* at 25-26. Father asserts that the conditions and causes that led to his incapacity, abuse, neglect or refusal have been remedied within the time allotted by the Adoption Act. *Id.* at 26. Father argues that he is "best suited to provide [for] the developmental, physical and emotional needs and welfare of [C]hildren." *Id.*

However, Attorney Server contends that Father's third claim is frivolous because he refused or was unable to achieve stability for himself or for Children. *Id.* Attorney Server asserts that "[F]ather demonstrated a total lack of insight into the problems that led to the placement of [C]hildren" and blamed the social workers for the termination of his parental rights. *Id.* Attorney Server also claims that Father failed to avail himself of drug treatment, obtain documentation of his employment, or allow access to his home. *Id.* Further, Attorney Server states that "the conditions that led to the incapacity, abuse and neglect had not been remedied" due to Father's failure to cooperate with his social workers. *Id.* at 27. Attorney Server argues that "[t]he evidence showed that [C]hildren had been in placement for almost two years, that they did not appear to have a meaningful bond with [F]ather, … and that they would not be harmed in any way by terminating [Father's] parental rights." *Id.* at 27-28.

In its Opinion, the trial court set forth the relevant law, addressed Father's second and third claims, and concluded that they lack merit. *See* Trial Court Opinion, 9/9/16, at 3-6. We agree with the reasoning of the trial court and affirm on this basis as to Father's second and third claims. *See id.*

Further, our independent examination of the record indicates that there are no other non-frivolous claims that can be raised. *See In re*

***S.M.B.***, 856 A.2d at 1237. Accordingly, we conclude that Father's appeal is frivolous, and Attorney Server is entitled to withdraw as counsel.

Petition to Withdraw granted; Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2017

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: C.P.S.B | : | CP-51-DP-0001739-2014 |
| | : | CP-51-AP-0000100-2016 |
| | : | |
| IN RE: A.N.S.B. | : | CP-51-DP0001149-2012 |
| | : | CP-51-AP-0000101-2016 |
| | : | |
| APPEAL OF: C.B., Father | : | Superior Court |
| | : | No. 1725 EDA 2016 |
| | : | No. 1726 EDA 2016 |

OPINION

**Younge, J.**

This appeal arises from this Court's Order on May 9, 2016, terminating the parental rights of Christopher Baker ("father"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. Gary Server, attorney for father, filed a timely appeal from the May 9, 2016 order terminating father's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On January 15, 2012, In-Home Protective Services ("IHPS") through North East Treatment Center (NET) was implemented for Shakeema Sipps ("mother") and Christopher Baker ("father").

In January 2012, Mother entered a drug and alcohol treatment impatient program through Gaundenzia and continued there until March 2012. Mother left the treatment program without being discharged.

At the Shelter Care Hearing, held on June 29, 2012, the Court referred mother and father to the Clinical Evaluation Unit (CEU) for an assessment and a forthwith drug and alcohol screen. The Court ordered the temporary commitment to DHS to stand.

At the Adjudicatory Hearing held on July 9, 2012, A.N.S.B. was adjudicated dependent and fully committed to DHS. Mother and father were also referred to CEU for a drug and alcohol screen.

On July, 30, 2012, mother gave birth to C.P.S.B.

On October 4, 2012, at a Permanency Review Hearing, the Court found that Aggravated Circumstances existed as to father. The Court ordered that DHS was to make no efforts to reunify father with A.N.S.B. DHS was instructed to explore a mother/baby placement at Gaudenzia when appropriate.

Thereafter, on April 15, 2013, at a Permanency Review Hearing the Court noted that A.N.S.B. had been residing with mother in a mother/baby drug and alcohol program at Gaudenzia. However, mother and A.N.S.B.'s whereabouts became unknown to DHS. DHS made several attempts to locate the family to no avail. The Court ordered that the DHS commitment be discharged retroactive to March 28, 2013 and the petition was to remain open.

On September 25, 2013, DHS received a General Protective Services Report ("GPS") alleging that mother frequently left her children alone without adult supervision. The report alleged an additional household member reportedly had five children also residing in the home with mother. The report further alleged there was no adult supervision in the home for the seven children. The report stated the children felt neglected and in fear. There was no furniture nor refrigerator in the home, except for two mattresses. Additionally, mother had an outstanding warrant for her arrest. The report was substantiated.

On December 9, 2013, at a Permanency Review Hearing, the Court noted that the family's whereabouts were unknown to DHS. The Court ordered the petition to remain open and the open bench warrant was to stand. DHS was to complete a Parent Locator Search ("PLS") for the family; DHS was to obtain an Order of Protective Custody ("OPC") and place the children when appropriate.

Subsequently, in December 2013, mother came to DHS for help. Mother and the children entered the Eliza Shirley House, but only remained for a few days and left on her own accord.

On July 7, 2014, at a Permanency Review Hearing, the Court ordered that the bench warrant as to mother was to stand; that the Community Umbrella Agency ("CUA") Turning Points for Children ("TPC") was to hire an on-ground private investigator to assist in locating mother and A.N.S.B., and if the A.N.S.B. were located, an OPC was to be obtained through DHS and to place her with police assist, if necessary.

On July 21, 2014, the private investigator located the family at a residence on Pratt Street. On the same day, DHS obtained and OPC and placed A.N.S.B. in foster care.

On July 3, 2014, at a Shelter Care Hearing, the Court lifted the OPC and discharged the temporary commitment as to A.N.S.B, and recommitted her to DHS; the Court also ordered the temporary commitment to DHS as to C.P.S.B. to stand.

Thereafter, in October 2015, father was released from incarceration at State Correctional Institution ("SCI") Graterford and made himself available to CUA. Shortly thereafter, DHS held a Family Service Plan (FSP) meeting. The objectives identified for father were to: 1) housing; 2) employment; 3) attend children's medical appointments; and 4) visits.

On May 9, 2016, during the Termination of Parental Rights hearing for father, the Court found by clear and convincing evidence that father's parental rights as to A.N.S.B. and C.P.S.B. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

2

The appeal of father is as follows:

## Issues

1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa.Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Father with his child and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the child.

2) Whether it was proven by clear and convincing evidence that Father's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

## Discussion

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa.Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, father's parental rights were terminated based on §§2511(a)(1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, father failed to perform parental duties for the children. The Court found by clear and convincing evidence that the father refused or failed to perform her parental duties.

In the instant matter, father was given revised FSP objectives in October 2015, after his release from incarceration at SCI. (N.T. 5/9/16, p. 15). Testimony of social worker revealed, father was found, at best, to have only partially completed some of his FSP objectives. (N.T. 5/9/16, pp. 36, 37). Moreover, father did not provide the Court with any documentation that would substantiate a finding that the children could safely be returned to his care. *Id.* Father failed to demonstrate that he could provide the children with stable housing, or that he was gainfully employed (N.T. 5/9/16 pp. 36,37) Testimony revealed father did not attend child's medical appointment (N.T. 5/9/16 pp. 36, 37)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult

3

circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

In the present matter, A.N.S.B. and C.P.S.B. have been in their current placement for twenty one months. (N.T. 5/9/16, p. 9, 12). The testimony established the children are residing in a positive environment with their foster parents and pre-adoptive resource for almost two years. *Id.* Further, the foster parents provide for A.N.S.B.'s and C.P.S.B.'s daily needs and the children have developed a parent-child bond with them. (N.T. 5/9/16, pp. 11, 12). While the record also reflects that father has had visits with the children in the community, once a week, father's visits never increased to overnight or weekend visits. (N.T. 5/9/16, p. 16).

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

It is incumbent upon a parent, when separated from his children, to maintain communication and association with the children. This requires an affirmative demonstration of parental devotion, imposing upon the parent the duty to exert himself, to take and maintain a place of importance in his children's lives. *In re V.E.*, 611 A.2d 1267, 1271 (Pa. Super. 1992).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

As of the May 9, 2016 hearing, A.N.S.B. and C.P.S.B. have been in care for twenty-one (21) months, and father had not progressed in his FSP permanency objectives in a way that would permit reunification to occur (N.T. 5/9/16, p. 36-38). Moreover, father is no stranger to DHS, as he knows first-hand through DHS' involvement with his other three children and the subsequent involuntary termination of his parental rights and the importance of his role in regaining custody of A.N.S.B. and C.P.S.B. (N.T. 5/9/16, pp. 33, 34).

The Court is not convinced that father would have the ability to exercise proper judgment in the future towards parenting these extremely young children, ages three and five, respectively. (N.T. 5/9/16, pp. 16, 26). Moreover, father's housing situation is speculative. Testimony revealed father's name is not on the lease where he resides, and father and his children would, indeed, be at the mercy of his paramour. (N.T. 5/9/16, pp. 31, 32). Thus, father would ask the Court to place the children in a situation where he and the children could potentially become homeless. Additionally, father failed to follow-up with CEU, so that a determination could be made whether he needed treatment. (N.T. 5/9/16, p. 29). Father's own conduct, has served as a barrier to reunification, as father is unable to perform his parental duties.

§2511 (a)(5) requires that :

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions

4

which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

(8)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate father's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000).

In the instant matter, the testimony established that A.N.S.B. and C.P.SB. would not suffer irreparable emotional harm if father's parental rights were terminated. (N.T. 5/9/16, pp. 8-11, 17, 18). The testimony of the CUA social worker, Ms. Dixon, established that A.N.S.B. and C.P.S.B. are with pre-adoptive foster parents who have developed a strong parent-child bond with them. (N.T. 5/9/16, pp. 9, 10, 12). In fact, Ms. Dixon testified that during father's most recent visit with C.P.S.B., she ran away from father and back to the foster parents. (N.T. 5/9/16, p. 9). Further, that C.P.S.B. has expressed her desire not to see father. (N.T. 5/9/16, p.10). Although, it was noted that A.N.S.B. made no affirmative comment regarding her desire to see father, Ms. Dixon clearly stated that both children through their actions express a continued resistance toward visiting with father, and that the children's behavior toward such visits grew progressively worse. (N.T. 5/9/16, pp. 9, 18, 19). Furthermore, the social worker testified that during father's visits, she did not observe a parent-child relationship between father and the children, and that father did not have a parent child bond with either child. The social worker's testimony noted such a relationship between both children with their foster parents. (N.T. 5/9/16, pp. 9-11).

5

Moreover, even if father were given the opportunity to care for A.N.S.B. and C.P.S.B, father's plans for the future are speculative. Therefore, this Court found based on all the evidence presented that terminating the parental rights of father as to A.N.S.B. and C.P.S.B. would not cause them irreparable harm due to their parent-child bond with their foster parents meet their daily needs. Accordingly, A.N.S.B. and C.P.S.B. should be adopted, as it is in their best interest. (N.T. 5/9/16, pp. 8, 18).

The Trial Court found by clear and convincing evidence that the Department of Human Services met its statutory burden pursuant to 23 Pa. C.S. §2511 (a) & (b) and that it was in the best interest of the children to change the goal to adoption. (N.T. 5/9/16, pp. 36-38).

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a)(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause A.N.S.B. nor C.P.S.B. to suffer irreparable harm and it is in the best interest of the children based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate father's parental rights.

Accordingly, the Trial Court's Order entered on May 9, 2016, terminating the parental rights of father, Christopher Baker, should be properly affirmed.

By the Court

6