J-A21039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  E.M.B., A MINOR

APPEAL OF:  E.M.E., FATHER

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 265 EDA 2015

Appeal from the Decree entered December 16, 2014,
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-51-AP-0000339-2014,
CP-51-DP-0002186-2012

BEFORE:  ALLEN, MUNDY, and FITZGERALD*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 31, 2015**

Appellant, E.M.E. ("Father"), appeals from the decree involuntarily terminating his parental rights to E.M.B. ("Child") (born in December of 2012) pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and the order changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

In October of 2007, the parties first became known to the Department of Human Services ("DHS") after DHS received General Protective Services ("GPS") reports alleging that Mother's children were left at the home unsupervised and that Mother cannot be a primary caregiver to her children due to mental illnesses.  In December of 2012, DHS learned that Mother gave birth to Child at a gestational age of thirty-six weeks, and Child

_____

* Former Justice specially assigned to the Superior Court.

[1] The parental rights of Child's mother, B.B. ("Mother"), were terminated on December 16, 2014.  Mother is not a party to the current appeal, nor did she file a separate appeal.

remained in the Neonatal Intensive Care Unit at Lankenau Hospital. On December 10, 2012, DHS obtained an Order of Protective Custody ("OPC"). On December 11, 2012, DHS went to Mother's home and found Mother did not have a crib, formula, diapers, bottles, or clothes in the home for Child. At a shelter care hearing on December 12, 2012, the trial court lifted the OPC and ordered Child to be temporarily committed to DHS. On December 19, 2012, the trial court adjudicated Child dependent, and Child was placed in foster care. At the time of Child's birth, Father was incarcerated for drug-related offenses.

On March 1, 2013, DHS held a Family Service Plan ("FSP") meeting. The trial court required Father to complete his FSP objectives. Father's objectives for the FSP were: (1) to attend all visits; (2) to maintain contact with the Child; (3) to participate in the Individual Service Plan ("ISP") with the provider; (4) to attend parenting classes; (5) to maintain contact with DHS and (6) to obtain and maintain employment. Father did not participate in the FSP meeting.

On June 21, 2013, following a permanency hearing, the trial court found that Father was released from incarceration and was residing with Mother. The trial court ordered Father to comply with all FSP objectives. On August 27, 2013, the trial court found Father minimally compliant with his permanency plan and referred him to Behavioral Health Services for consultation and evaluation. Father was also ordered to complete a

parenting capacity evaluation. Following a permanency review hearing, Father was found in substantial compliance with the permanency plan on January 13, 2014. Father visited Child twice. The last time Father visited Child was in February of 2014. On April 14, 2014, following a permanency review, the trial court found Father was not compliant with his permanency plan and his whereabouts were unknown.

On July 10, 2014, DHS filed a petition to involuntarily terminate Father's parental rights to Child. On December 8, 2014 and December 16, 2014, the trial court held hearings on the termination petition. At the hearing, Sharese Blout, a DHS social worker; Temperance Bethia, a case manager from Women's Christian Alliance; Simone Young, a support staff employee from Royal Homes for Mother; and Mother testified. Father was incarcerated at the time of the termination hearing. Father did not participate, but his counsel did participate and requested a continuance, which was denied. On December 16, 2014, the trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changing Child's permanency goal.

On January 15, 2015, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issue:

1. Was Father deprived of a fair hearing when the [trial c]ourt denied his request for a continuance where Father was available at the time the case was scheduled and for several hours thereafter, where the trial [c]ourt's management of its

- 3 -

> list caused the [trial c]ourt to call the case after Father was required to return to his prison housing, and where the same problem had occurred eight days before[?]

Father's Brief at 5.[2]

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to

---

[2] Father's Statement of Question Involved is not the same as in Father's Concise Statement of Errors Complained of on Appeal. However, the issues in the Concise Statement essentially preserve the issue in Father's brief. Father does not contest the court's determination under 23 Pa.C.S.A. § 2511(a) and (b) and Child's goal change to adoption in his Statement of Questions Involved. *See* Father's Brief 5. Consequently, those challenges are waived. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that we will not ordinarily consider any issue not preserved in the Statement of Questions Involved in an appellant's brief, and any issue not raised in a Concise Statement of Errors Complained of on Appeal is waived).

- 4 -

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***In re J.L.C. & J.R.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

Father argues that he was deprived of a fair hearing when the trial court denied his request for a continuance where Father was available at the time the case was scheduled and for several hours after, and that the trial court's case management caused the trial court to call the case after Father was required to return to his prison housing. We disagree.

It is well-settled that termination of parental rights implicates a natural parent's Fourteenth Amendment right to due process under the United States Constitution. ***See In the Interest of A.P.***, 692 A.2d 240, 242 (Pa. Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (citing

- 5 -

*Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  It is also well-settled that "a trial court is not required to transport an incarcerated parent to a termination hearing in order to satisfy the needs of due process.  However, if the incarcerated parent desires to contest the termination petition, the trial court must afford the incarcerated parent the ability to participate meaningfully in the termination hearing through alternate means."  *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005) (citation omitted).  This Court has determined that participation by telephone satisfies due process requirements.  *See In the Interest of A.P.*, 692 A.2d at 243.

Moreover, in *In re Adoption of Dale A., II*, 683 A.2d 297 (Pa. Super. 1996), this Court found that the father's due process rights were not violated during a termination hearing even though he did not participate in the hearing in person or by telephone.  In that case, the father's court-appointed counsel was present at the hearing, had the opportunity to cross-examine the witnesses, and presented the father's testimony by way of interrogatories.  This Court found that the father "had access to the court through his court-appointed attorney, who cross-examined all witnesses presented, and through the presentation of evidence by interrogatory."  *Id.* at 300.  In holding there was no deprivation of the father's constitutional rights, this Court reiterated, "Due process is flexible and calls for such procedural protections as the situation demands."  *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

Instantly, the trial court addressed Father's claim as follows:

> Prior to the commencement of the termination hearing, Father's counsel advised the [trial c]ourt that her client was incarcerated in Chester County. Counsel represented to the [trial c]ourt that her client had been available by phone earlier that day but for some unstated reason was lost for the day. No request was made by Father's counsel for a continuance nor for [the trial c]ourt to contact the prison to secure his presence. The termination hearing proceeded. After testimony had begun, counsel for Father interrupted and the following exchange took place.
>
> > MS. PIE: Your Honor, I'm sorry to interrupt. Are we proceeding on [F]ather today?
> >
> > THE COURT: We are.
> >
> > MS. PIE: Very well.

Trial Court Opinion, 2/26/15, at 12-13 (**See** N.T., 12/16/14, at 6-8).

The trial court further stated:

> No request was made by counsel for a continuance nor to have her client be made available by phone. After the assistant city solicitor resumed his direct examination, Father's counsel again interrupted, acknowledging that she had failed to make a formal request for continuance. Counsel made a request at that time which was denied by [the trial c]ourt. The hearing resumed. Again counsel made no request of [the trial court] to have her client available by phone at that time. At the conclusion of the hearing Father's counsel made a request that the case be continued for [the trial c]ourt to hear testimony from her client. No offer of proof was made and counsel's request was denied.

**Id.** at 12-13 (citations omitted).

The trial court stated that it "could not fathom any testimony that Father could possibly present which would have changed the outcome of this

- 7 -

case." *Id.* at 13. At the conclusion of the termination hearing, the trial court found:

> DHS has satisfied their requirement by producing clear and convincing evidence, overwhelming evidence that neither one of these parents are capable of parenting [the C]hild, have attempted to parent [the C]hild, put themselves in a position to parent [the C]hild, taken steps to have various agencies that are available to assist parents to parent the [C]hild.

N.T., 12/16/14, at 49-50.

We find no deprivation by the trial court of Father's due process rights with respect to the termination of his parental rights. Father was represented by counsel at all times throughout the proceedings. While Father was not able to participate by telephone, Father's counsel had an opportunity to and did cross-examine the witnesses. *See In re Adoption of Dale A., II*, *supra*. We find no error of law or abuse of discretion in the trial court's decree and order.

After a careful review, we affirm the decree terminating Father's parental rights on the basis of section 2511(a)(1) and (b), and the order changing the permanency goal for Child to adoption.

Decree and order affirmed.

Judge Mundy joins the memorandum.

Justice Fitzgerald notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/31/2015</u>