J-S10001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.M.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.M., MOTHER | : : : : : : : | |
| | : | No. 3287 EDA 2018 |

Appeal from the Order Entered October 15, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001230-2017,
FID: 51-FN-004296-2011

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R., A MINOR | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.M, MOTHER | : : : : : : : : | |
| | : | No. 3350 EDA 2018 |

Appeal from the Order Entered October 15, 2018
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): CP-51-DP-0001020-2013,
FID 51-FN-004296-2011

BEFORE:   GANTMAN, P.J.E., STABILE, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                **FILED MARCH 05, 2019**

In these consolidated appeals, Appellant, N.M. ("Mother"), appeals from

the orders of the Court of Common Pleas of Philadelphia County, entered

October 15, 2018, that terminated her parental rights to her child, J.A.M.R.

_____
* Retired Senior Judge assigned to the Superior Court.

("the Child"), born 2013, and changed the Child's permanency goal from reunification with Mother to adoption.  We affirm.

The facts and procedural history underlying this appeal are as follows. On March 22, 2016, the Department of Human Services ("DHS") received a report that Mother was outside with the Child for several hours and that Mother told police that there were people trying to break into her home through the chimney and cracks in the walls.  *See* Trial Court Opinion, filed December 11, 2018, at 1-2.  The Child "was covered in feces and had not had a bath[.]"  N.T., 10/15/2018, at 4.  Mother was involuntarily committed to a mental health institution, and the Child was initially placed with his maternal grandfather but was later removed to a crisis nursery, followed by a foster home.  *See* Trial Court Opinion, filed December 11, 2018, at 2.

On May 4, 2016, a case manager from a community umbrella agency ("CUA"), Northeast Treatment Center, visited Mother and discovered that Mother was not taking her mental health medication.  On May 16, 2016, the Child was adjudicated dependent.  On August 11, 2016, DHS established a single case plan ("SCP") for Mother; the SCP required Mother to commit to mental health treatment, to take her medication, to comply with all instructions from the CUA, to maintain appropriate housing, and to attend supervised visitation with the Child.

On December 20, 2017, DHS filed a petition to terminate Mother's parental rights to the Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8)

and (b) and to change the Child's permanency goal from reunification with Mother to adoption. On October 15, 2018, during the hearing on the termination and goal change petition, a CUA case manager testified that Mother was consistently non-compliant with her SCP objectives, even though "referrals [were] made for [M]other to engage in a program she needed in order to complete those objectives[.]" N.T., 10/15/2018, at 6-7; *see also* Trial Court Opinion, filed December 11, 2018, at 2. The case manager added that, had Mother requested assistance for housing, her agency would have referred Mother to a housing program. N.T., 10/15/2018, at 12.

The CUA case manager further testified that Mother's visits with the Child were "suspended over a year ago due to her unaddressed mental health issues." *Id.* at 7. Her testimony continued:

> **Q.** With respect to any parental duties for [the Child], has [M]other inquired at all as to how [the Child] is doing in school or medically or just generally?
>
> **A.** No.
>
> **Q.** Did you provide [Mother] with your own personal information, your phone number, your agency's address and your card?
>
> **A.** At the last court date.
>
> **Q.** In your opinion, did she have opportunity to inform you if she complied with any of her objectives?
>
> **A.** Yes, she would have.
>
> **Q.** Would you give her that information so she could inquire about any of [the Child]'s needs if she chose?
>
> **A.** Sure. . . .

- 3 -

**Q.** In your opinion, at this time, with whom do you believe that [the Child] shares primary parent/child bond?

**A.** With his foster parents.

**Q.** And do you have any reason to think that [the Child] shares a parent child relationship with [Mother]?

**A.** No. . . .

**Q.** Have you observed any signs of irreparable harm to [the Child] from not having been in contact with his mother?

**A.** No, I haven't. . . .

**Q.** Where does [the Child] say he wants to stay?

**A.** He said he wants to stay at mom-mom's forever and ever.

*Id.* at 12-15. "Mom-mom" is the name the Child calls his foster/pre-adoptive mother. *Id.* at 15.

Mother's counsel cross-examined the CUA case manager. *Id.* at 20-23. During cross-examination, the CUA case manager testified that she never saw any interaction between Mother and the Child and never noticed any bond between them. *Id.* at 21.

Mother interrupted the CUA case manager's testimony twice. First, she called out that the Child "had not been left alone[.]" *Id.* at 4. The second time, after the CUA case manager stated that "it would be unsafe" to reunify Mother and the Child, Mother interjected, "It's not unsafe to be with my child[.]" *Id.* at 8. The trial court warned Mother that she "will be taken out of the room and . . . will not be here to participate" if she interrupted again. *Id.* Mother replied that "the Court of law is lying, I need my son back." *Id.* The trial court asked the sheriff to escort Mother from the courtroom. *Id.*

After repeatedly demanding, "You need to return my son," Mother left the courtroom and never returned. *Id.* at 9-10.

After DHS finished presenting its evidence, the trial court asked Mother's counsel whether he had any evidence, and he responded: "No evidence right now." *Id.* at 24. After DHS gave its closing argument, Mother's counsel "ask[ed] that [the trial court] hold off from [its] decision until [Mother is] able to come in and testify on her behalf[.]" *Id.* at 25. The trial court asked Mother's counsel what would happen if Mother were allowed to return to the courtroom, and counsel answered, "I know she probably wants to testify at the hearing[.]" *Id.* at 29. The trial court denied counsel's request for a continuance to present more evidence, because he had previously closed his case. *Id.* at 26-29.

At the conclusion of the hearing, the trial court entered an order involuntarily terminating Mother's parental rights to the Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b) and an order changing the Child's permanency goal from reunification to adoption. On November 4, 2018, Mother filed timely direct appeals of both orders, along with concise statements of errors complained of on appeal for both. *See* Pa.R.A.P. 1925(a)(2)(i).[1]

Mother presents the following issues for our review:

---

[1] The trial court entered its opinion on December 11, 2018. *See* Pa.R.A.P. 1925(a)(2)(ii).

1.      Did the [trial court] rule[] in error in not granting Mother's counsel a continuance so Mother could testify at the hearing[?]

2.      Did the [t]rial [court] rule in error that the Philadelphia City Solicitor's Office[2 met] its burden of proof that Mother'[s] parental rights to her child[] should be terminated[?]

3.      Did the trial [court] rule in error that the termination of Mother's []parental rights would best serve the needs and welfare of the child[?]

4.      Did the [t]rial [court] rule in error that the Philadelphia City Solicitor's Office [met] its burden of proof that the goal be changed to adoption[?]

Mother's Brief at 3.

Mother first contends that the trial court erred and violated her due process rights by not granting her counsel's motion for a continuance so that she could testify at the termination and goal change hearing.  Mother's Brief at 5-6.[3]  Mother's brief does not specify the content of the testimony that Mother would have given, had a continuance been granted.  *Id.*

"[A] trial court's grant or denial of a request for a continuance will not be disturbed absent an abuse of discretion."  *In re A.N.P.*, 155 A.3d 55, 66 (Pa. Super. 2017) (citation omitted).

It is well settled that termination of parental rights implicates a parent's Fourteenth Amendment right to due process. *See In the Interest of A.P.*, 692 A.2d 240, 242 (Pa. Super. 1997) (stating that parents have a "fundamental liberty interest ... in the care,

---

[2] The Office of the City Solicitor's Child Welfare Unit represents DHS.

[3] The trial court did not address this issue in its opinion, *see generally* Trial Court Opinion, filed December 11, 2018, even though it was preserved in Mother's concise statement of errors complained of on appeal.  Appellant's Concise Statement of Matters Complained of on Appeal, Docket Number CP-51-AP-0001230-2017, 11/4/2018, at 2 ¶ 3.

custody, and management of their children"). An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected action.

*Id.* (some citations omitted).

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. Due process is flexible and calls for such procedural protections as the situation demands." *Id.* (internal citations and quotation marks omitted). In the current action, Mother does not allege that she lacked adequate notice or that the trial court was not impartial or lacked jurisdiction. *See id.*; Mother's Brief at 5-6. Consequently, we only need consider whether Mother had an opportunity to be heard and a chance to defend herself. *A.N.P.*, 155 A.3d at 66.

In *In re Adoption of Dale A., II*, 683 A.2d 297 (Pa. Super. 1996), this Court considered whether a father's due process rights were violated during a termination hearing, where he did not participate in the hearing in person or by telephone. This Court concluded that his rights were not violated, because he "had access to the court through his court-appointed attorney, who cross-examined all witnesses presented, and through the presentation of evidence by interrogatory." *Id.* at 300.

In the current appeal, we likewise find no deprivation by the trial court of Mother's due process rights. Mother was represented by counsel at all times throughout the proceedings. While she was not able to participate, her counsel had an opportunity to and did cross-examine the sole witness. ***See***

*id.*; N.T., 10/15/2018, at 20-23. Although, unlike the father in ***Dale A.***, 683 A.2d at 300, Mother did not present evidence by interrogatory, when asked by the trial court what would happen if Mother returned to the courtroom, Mother's counsel was unable to articulate any additional evidence that she would have provided if she were to testify, N.T., 10/15/2018, at 29, and Mother's brief also does not explain what further information she would have provided to the trial court had she testified, Mother's Brief at 5-6. The trial court thus did not abuse its discretion by denying Mother's counsel's request for a continuance. ***See A.N.P.***, 155 A.3d at 66.

We now turn to Mother's contention that the trial court abused its discretion by terminating her parental rights. Mother's Brief at 6-7. We consider Mother's challenges to the termination of her parental rights in light of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations, brackets, and quotation marks omitted).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by clear and convincing evidence, a standard which requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re K.T.E.L.*, 983 A.2d 745, 750 (Pa. Super. 2009) (citation and internal quotation marks omitted).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). We will affirm if we agree with the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a) and its decision as to § 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the current case, we affirm the trial court's decision to terminate Mother's parental rights to the Child under subsections 2511(a)(2) and (b), which provide:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings,

income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(2), (b).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

> *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

*In re T.L.C.*, ____ A.3d ____, 2018 PA Super 322, 2018 WL 6259392 at *5-*6

(filed Nov. 30, 2018).

> Additionally,

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of

continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re G.M.S.*, 193 A.3d 395, 401 (Pa. Super. 2018) (citations and internal brackets omitted) (some formatting).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to Mother's claims that DHS failed to establish the elements of 23 Pa.C.S. § 2511(a)(2), (b). The trial court opinion properly disposes of these questions:

> DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to remedy the problems that led to the Child's placement. Mother failed to cooperate with the services provided by CUA, including housing, mental health, and medication management. N.T. 10/15/18 at 6-8. Mother knew of the objectives throughout the life of the case, and they had not changed; yet, her level of cooperation has always been minimal to none. Moreover, the evidence established that "neglect" existed given that Mother's visitation with the Child was suspended due to her refusal to get mental health treatment and this still did not persuade Mother to comply with any of the CUA or court orders necessary to reunify with her son. *Id.* at 7. Th[e trial c]ourt found that Mother's failure to fully comply with her objectives throughout the life of the case left the Child without essential parental care, and the cause of such neglect, refusal and continued incapacity has not been, and will not be, remedied by Mother. Based on the foregoing, th[e trial c]ourt found that competent evidence existed to justify the termination of Mother's parental rights pursuant to Section 2511(a)(2). . . .
>
> Having found that the statutory grounds for termination have been satisfied pursuant to 2511(a), th[e trial c]ourt further found that termination of Mother's parental rights serves the best interest of the Child pursuant to 2511(b). . . .

In the instant matter, th[e trial c]ourt determined that the Child would not suffer irreparable emotional harm if Mother's parental rights were terminated. Mother failed to offer any evidence establishing the existence of a parent-child bond. The testimony demonstrated that the Child's primary bond is with his foster parent. [*Id.*] at 14. Mother has not called to check in on Child or see how he is progressing in care. *Id.* at 12. Furthermore, th[e trial c]ourt found Mother's unwillingness to comply with the objectives in order to re-establish visitation with the Child insufficient to foster a meaningful and healthy parental connection. Th[e trial c]ourt believes that we are nowhere closer to reunification now than we were when this case first came in in May 2016. Additionally, in determining that termination would best serve the needs and welfare of the Child, th[e trial c]ourt considered that Mother has not been able to meet the Child's emotional, physical, and developmental needs, or provide the Child with a healthy, safe environment for eighteen months prior to the [termination] hearing. For the foregoing reasons, th[e trial c]ourt properly granted DHS's petition to involuntarily terminate the parental rights of Mother pursuant to Section 2511(b).

Trial Court Opinion, filed December 11, 2018, at 7-9, 10-11 (citation omitted)

(some formatting).[4]

_____

[4] Assuming we were not to affirm the trial court's decision to terminate Mother's parental rights to the Child pursuant to subsection 2511(a)(2), we would affirm the trial court's decision to terminate Mother's parental rights pursuant to subsection 2511(a)(5) ("The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child."). At the time DHS filed the termination petition, the Child had been in care for over twenty months, Trial Court Opinion, filed December 11, 2018, at 1-2, which is more than the statutorily required six months. 23 Pa.C.S. § 2511(a)(5). The condition that had led to the removal of the Child – Mother's mental health issues – continued to exist, N.T., 10/15/2018, at 7; Trial Court Opinion, filed December 11, 2018, at 1-2, and

Finally, Mother contends that the trial court erred by finding that DHS "met its burden of proof that the [Child's permanency] goal be changed to adoption." Mother's Brief at 8.[5] According to Mother, "[w]hen an emotional bond is present between parent and child, the court must consider the effect

_____

Mother demonstrated no effort to remedy that condition and failed to take advantage of any services provided by the CUA. N.T., 10/15/2018, at 6-7, 12; Trial Court Opinion, filed December 11, 2018, at 1-2.

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted). Finally, as the trial court explained:

> The evidence clearly establishes that termination would be in the best interest and welfare of the Child as he is well-adjusted in [his] pre-adoptive home and ha[s] a strong bond with [his] foster parent. ***See*** [N.T., 10/15/2018,] at 14. When asked about where he would like to remain, the Child stated that he wanted to stay in the pre-adoptive foster home "forever and ever[.]" ***Id.*** at 15.

Trial Court Opinion, filed December 11, 2018, at 9 (some formatting). Therefore, all of the required elements of subsection 2511(a)(5) were established, and, assuming *arguendo* that we were not affirming the termination order pursuant to subsection 2511(a)(2), we would still affirm pursuant to subsection 2511(a)(5). ***See B.L.W.***, 843 A.2d at 384 (this Court will affirm if it agrees with the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a)).

[5] The trial court did not address this issue in its opinion, ***see generally*** Trial Court Opinion, filed December 11, 2018, even though it was preserved in Mother's concise statement of errors complained of on appeal. Appellant's Concise Statement of Matters Complained of on Appeal, Docket Number CP-51-DP-0001020-2013, 11/4/2018, at ¶ 1.

of its permanent severance on the child[,]" and, in the current matter, the CUA case manager was unable to testify about the observations by previous case workers of the interactions between Mother and the Child. *Id.* at 9 (citing *In re R.L.T.M.*, 860 A.2d 190, 195 (Pa. Super. 2004)). Mother continues that, in fact, "[t]here was no evidence presented about the [C]hild's relationship and interaction with [M]other." *Id.*

> In cases involving a court's order changing the court-ordered goal to adoption, our standard of review is abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record.

*In re L.T.*, 158 A.3d 1266, 1276 (Pa. Super. 2017) (citation and internal brackets omitted) (some formatting); *see also In re J.M.*, 166 A.3d 408, 416 (Pa. Super. 2017) (same standard of review in dependency case).

Preliminarily, we note that Mother's reliance on *R.L.T.M.*, 860 A.2d at 195, is misplaced. *See* Mother's Brief at 9. *R.L.T.M.* concerned a termination petition pursuant to the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and the consideration of the emotional bond between a parent and child is part of the analysis for termination parental rights pursuant to 23 Pa.C.S. § 2511(b) of the Adoption Act. *See G.M.S.*, 193 A.3d at 401. Mother's attempt to apply *R.L.T.M.* to a change of a child's permanency goal from reunification to

- 14 -

adoption – a process controlled by an entirely different statute, the Juvenile Act, 42 Pa.C.S. §§ 6301-6375 – is thereby misguided. **See** Mother's Brief at 9.

Furthermore, contrary to Mother's assertion, the list of factors for a trial court to consider when ruling on a goal change petition does not include whether "an emotional bond is present between parent and child." **Id.**; **see A.N.P.**, 155 A.3d at 67 ("When considering a petition for goal change for a dependent child, the trial court considers:  the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved." (citations omitted) (some formatting)).

Moreover, even if the emotional bond between the parent and child were an appropriate consideration for a change of permanency goal, Mother's allegation that there was no evidence about the relationship between herself and the Child is still erroneous. **See** Mother's Brief at 9.  The CUA case manager testified that Mother and the Child do not share a parent-child relationship or bond and that the Child's primary parent-child bond is with his foster parents.  N.T., 10/15/2018, at 14, 21.  Due to Mother's erratic behavior and mental instability, visitation between Mother and the Child had been

suspended, and there had been no interaction between Mother and the Child, making any further development of a parent-child relationship or bond impossible. *Id.* at 7, 21.[6] Hence, DHS presented evidence about Mother and the Child's relationship – or lack thereof.

Thus, we conclude that Mother's final issue is meritless and that the trial court did not abuse its discretion in altering the Child's permanency goal from reunification with Mother to adoption. *See L.T.*, 158 A.3d at 1276.

Based on the foregoing, we hold that the trial court did not abuse its discretion by terminating Mother's parental rights to the Child and by changing the Child's permanency goal from reunification with Mother to adoption. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/19

---

[6] To the extent that Mother contends that other case workers could have testified differently about the relationship between herself and the Child, *see* Mother's Brief at 9, she could have called such witnesses herself.