J-A26041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.W., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.W., FATHER | | |
| | : | No. 1217 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002042-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: H.W., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.W., FATHER | | |
| | : | No. 1218 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000083-2021

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

DISSENTING MEMORANDUM BY BOWES, J.:    **FILED DECEMBER 30, 2021**

As I believe the certified record sustains the trial court's decision to terminate the parental rights of M.W. ("Father") to his son, H.W., I respectfully dissent.  In contrast to the learned majority, I can find no basis to disturb the trial court's conclusion that the Philadelphia Department of Human Services ("DHS") presented clear and convincing evidence to establish the statutory grounds to terminate Father's parental rights pursuant to 23 Pa.C.S.

§ 2511(a)(1). Thus, I would address Father's remaining three claims and, as discussed *infra*, affirm the orders.

Instantly, the trial court found grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). These subsections provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an

- 2 -

agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8). We need only agree with the court as to any one subsection of § 2511(a), in addition to § 2511(b), to affirm the order terminating involuntarily Father's parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

> Appellate review in cases involving involuntary termination of parental rights is limited to determining whether the trial court's determination is supported by competent evidence. When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion. An abuse of discretion is found where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. It matters not that an appellate court might have reached a different conclusion, as it is well-established that absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.

*In re Adoption of L.A.K.*, No. 14 WAP 2021, 2021 WL 6071745 at *7 (Pa. Dec. 23, 2021) (cleaned up).

Initially, I agree with the learned majority that § 2511(a)(5) and (8) are inapplicable because H.W. was not removed from the care of Father. *See* Majority at 12. In fact, Father was already incarcerated at the time of H.W.'s removal. Nonetheless, I cannot agree with the majority's conclusion that the trial court erred in finding DHS presented clear and convincing evidence establishing grounds for termination under § 2511(a)(1). Contrary to our

Supreme Court's recent admonishment, it appears that, "[r]ather than determine whether the trial court's findings of fact were supported by evidence of record, the [majority instead] reviewed the record *de novo*, making its own credibility determinations and findings of fact." **L.A.K.**, **supra** at *10. Our Supreme "Court has repeatedly stated that in termination cases involving close calls, deference to the trial court's determination is particularly crucial." **Id**. at *11.

Here, the learned majority focuses on § 2511(a)(2), concluding that clear and convincing evidence was not presented where the caseworker's "sole reason" for "why reunification would not be possible . . . was Father's incarceration and consequent inability to be a resource for the child." Majority at 16 (citation and quotation marks omitted). While the majority relies on **In re R.I.S.**, 36 A.3d 567, 569 (Pa. 2011), for the proposition that "a parent's incarceration, standing alone, cannot constitute proper grounds for the termination of his or her parental rights," it neglected the trial court's finding that Father failed to use reasonable efforts to overcome the obstacle of his incarceration. **Id**. Hence, for the reasons I explain below, I reject my learned colleagues' preoccupation with § 2511(a)(2) and, instead, would find that the certified record supports the trial court's analysis pursuant to § 2511(a)(1).

In **In Re Adoption of S.P.**, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the effects of incarceration on a court's termination analysis under § 2511(a)(1) and (2). As to § 2511(a)(2), "[i]ncarceration neither compels nor precludes termination[,]" but rather "is a factor, and indeed can be a

determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2)[.]" *Id*. at 828 (cleaned up).  As to subsection 2511(a)(1), the *S.P.* Court observed as follows:

> Applying in [*In re McCray's Adoption*, 331 A.2d 652 (Pa.1975)] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child."  *Id*. at 655.  We observed that the father's incarceration made his performance of this duty "more difficult."  *Id*.
>
> . . . .
>
> [The *McCray's* Court] stated:
>
>> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment.  Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration.  Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child.  Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.
>
> *Id*. at 655 (footnotes and internal quotation marks omitted). Notably, we did not decree that incarceration could never be a factor in a court's determination that grounds for termination had been met in a particular case.  Instead, **the emphasis of this passage was to impose on the incarcerated parent, pursuant to an abandonment analysis, a duty to utilize available resources to continue a relationship with his or her child.**

*Id*. at 828 (emphasis added).  Thus, as established in *In re McCray's Adoption*, the primary focus of the § 2511(a)(1) analysis is whether an

- 5 -

incarcerated parent exercised reasonable firmness in declining to yield to obstacles created by imprisonment and employed available resources to maintain a relationship with his or her child. *See In re Adoption of Dale A., II*, 683 A.2d 297, 302 (Pa.Super. 1996) (noting "a parent's responsibilities are not tolled during his incarceration. Instead, a reviewing court must analyze whether the parent utilized those resources available while in prison to maintain a relationship with his child.").

Instantly, at the time of the hearing on April 28, 2021, H.W. was four years old. Father had been incarcerated H.W.'s entire life, and his earliest potential release date would be May of 2022. Jasmine Jackson, the case manager for the Community Umbrella Agency, testified that Father was aware of H.W.'s placement. She noted that although Father was engaged in a parenting program and GED course as part of his single case plan, due to his continued incarceration, he was not available as a resource for H.W. N.T., 4/28/21, at 103. Father did not have telephone contact with H.W. through the foster parent. *Id*. at 126. Father inquired about virtual visits with H.W., but Ms. Jackson did not hear back from the contact person with whom she had been put in contact with by Father for arranging such visits. *Id*. at 111, 127. According to Father, he "check[ed] in here and there" about the virtual visits but had not heard anything. *Id*. at 111. Prior to H.W.'s placement, Mother would bring H.W. to visit Father in the county jail on a weekly basis. However, since H.W.'s placement in 2019, the only contact Father has had

with H.W. was an undisclosed number of telephone calls, which only occurred during Mother's visits with H.W. *Id*. at 104.

While Father testified that his earliest release date could be in May of 2022, over one year from the date of the hearing, Father could not guarantee he would be released at that time. Accordingly, H.W. would remain in foster care for at least another twelve months until Father's possible release. Even after Father's release, it is unclear when, if ever, he would be able to demonstrate the maturity and stability needed to parent H.W. As this Court has often emphasized, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Moreover, the evidence presented did not establish an attempt by Father to use his available resources to overcome the obstacle of incarceration in providing parental care to H.W. Besides asking once to set up virtual visits and checking the status of that request "here and there[,]" Father did not otherwise attempt to set up virtual visits or call H.W. through the foster parent, and there was no evidence that Father sent H.W. letters, cards, or other correspondence in an attempt to maintain a place of importance in H.W.'s life.

Based on the foregoing, I agree with the trial court that "Father's continued incapacity caused [H.W.] to be without essential parental care,

control or subsistence, and the causes of the incapacity could not or would not be remedied by him, [thereby] establishing grounds for termination of his parental rights." Trial Court Opinion, 7/27/21, at 20. Hence, the trial court did not abuse its discretion in concluding that DHS proved, by clear and convincing evidence, that termination of Father's parental rights was warranted pursuant to § 2511(a)(1).

Next, I address whether the involuntary termination of parental rights would best serve H.W.'s developmental, physical, and emotional needs and welfare pursuant to subsection 2511(b).[1]

This Court has explained the requisite analysis as follows:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and

---

[1] The Adoption Act outlines the pertinent considerations as follows:

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010). As a general matter, Pennsylvania does not require the trial court to enlist a formal bonding evaluation, and the court's needs and welfare analysis need not hinge upon expert testimony. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2011).

In relation to § 2511(b), the trial court "found that DHS provided clear and convincing evidence that termination of Father's parental rights met the developmental, physical and emotional needs and welfare of the Child, and the statutory requirements pursuant to 23 Pa.C.S. . . . § 2511(b)." Trial Court Opinion, 7/27/21, at 20. For the following reasons, I agree.

Father argues that he was trying to work on the bond by setting up virtual visits, albeit unsuccessfully, and speaking to H.W. on the telephone during Mother's visits. Father's brief at 38-39. The record belies this assertion.

At the evidentiary hearing, Ms. Jackson acknowledged that Father had inquired about virtual visits, but his contact person did not respond to her. She further acknowledged that the content of the telephone calls she observed during Mother's visits was "appropriate." However, she did not observe any parent/child bond between Father and H.W., who never asked for Father, and

Father conceded that H.W. probably would not remember him. N.T., 4//28/21, at 104, 111, 126-27. Accordingly, I would find that the trial court did not abuse its discretion in concluding that DHS had presented clear and convincing evidence in support of termination under § 2511(b).

Finally, I turn to Father's arguments challenging the goal change. This Court reviews a goal change order for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). When considering a goal change petition, "[t]he best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re A.B.*, 19 A.3d 1084, 1089 (Pa.Super. 2011) (citations and quotation marks omitted).

As with his first claim, Father posits that the trial court abused its discretion when it changed H.W.'s goal to adoption because Father was complying with his single case plan goals and attempting to maintain contact with H.W. Father's brief at 39-45. For the reasons already discussed throughout this dissenting memorandum, I believe Father's claim is meritless. In sum, Father has failed to meaningfully attempt to overcome the obstacle of his incarceration. He has shown himself unwilling or incapable of providing H.W. with permanence and stability. Moreover, the certified record confirms that H.W. does not share a parental bond with Father. Thus, the record supports the court's finding that it does not serve H.W.'s best interests to

preserve the goal of reunification. Accordingly, I would not disturb the goal change order.

For all of the foregoing reasons, I do not discern an error of law or abuse of discretion in the trial court's decision to terminate Father's parental rights to H.W. and change H.W.'s permanent placement goal to adoption.

Accordingly, I would affirm the trial court's orders.